IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MARCUS JAMES SMITH,

    Petitioner,                       2: 08 - cv - 3136 - MCE TJB

    vs.

CLAUDE E. FINN,

    Respondent.                   FINDINGS AND RECOMMENDATIONS

_____/

I. INTRODUCTION

       Petitioner, Marcus Smith, is a state prisoner proceeding with a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner is currently serving a sentence of fifteen years to life imprisonment following a plea in 1983 for second-degree murder. Petitioner challenges the April 2008 decision by the Board of Parole Hearings (the "Board") which denied Petitioner parole. Petitioner presents several claims in his habeas petition; specifically: (1) the Board violated the Ex Post Facto Clause by denying him parole for failing to comply with the applicable "matrix system" ("Claim I"); (2) the Board's denial of parole violated Petitioner's due process and equal protection rights along with his right to be free from cruel and unusual punishment ("Claim II"); (3) the Board's denial of parole violated his plea agreement and since Petitioner was not informed of the consequences of his plea agreement, the plea was not knowing

1

1 and voluntary ("Claim III"); and (4) the Board's denial of parole violated <u>United States v.</u>
2 <u>Booker</u>, 543 U.S. 220 (2005) because it acted to increase Petitioner's authorized punishment
3 ("Claim IV").  For the following reasons, the habeas petition should be denied.

## II.  FACTUAL[1] AND PROCEDURAL BACKGROUND

> On March 11th of 1980, officers were dispatched to the 1300 block
> of East Holt to investigate a shooting, according to Ron Anderson
> and other witnesses.  Anderson and the victim, Addie (sp) Mae (sp)
> Rantz (sp) Smith, the estranged wife of inmate Smith, had been
> westbound on Holt in his – Anderson's vehicle on the way to work
> at General Electric.  Smith drove alongside of Anderson's car and
> fired one shot, which hit Anderson in the jaw.  Anderson pulled to
> the curb and got out to seek aid.  Smith made a U turn, returned,
> got out of his vehicle, and fired four shots at the victim who had
> also gotten out of Anderson's car.  She died within minutes of a
> gunshot wound to her brain.
>
> According to the coroner's report, there were three bullet wounds
> to her head and one to her shoulder.

(Pet'r's Pet. at p. 35-36.)

In 1983, Petitioner pled guilty to second-degree murder.  In April 2008 the Board conducted a subsequent parole consideration hearing.  The Board ultimately concluded that Petitioner was not suitable for parole and that he would pose an unreasonable risk of danger to society or a threat to public safety if released from prison.

Petitioner challenged the Board's decision in the County of San Bernardino Superior Court via a state habeas petition.  On August 12, 2008, that court denied the state habeas petition in a written decision.  Petitioner's state habeas petition was summarily denied by the California Court of Appeal, Fourth District, Division Two.  On October 16, 2008, the California Supreme Court summarily denied the state habeas petition.  In December 2008, Petitioner filed the instant federal habeas petition.

//

---

[1] The factual background of the commitment offense is taken from the probation officer's report which was read into the record by the Board during Petitioner's April 2008 hearing.

### III.  APPLICABLE LAW FOR FEDERAL HABEAS CORPUS

An application for writ of habeas corpus by a person in custody under judgment of a state court can only be granted for violations of the Constitution or laws of the United States. See 28 U.S.C. § 2254(a); see also Peltier v. Wright, 15 F.3d 860, 861 (9th Cir. 1993); Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing Engle v. Isaac, 456 U.S. 107, 119 (1982)). Petitioner filed this petition for writ of habeas corpus after April 24, 1996, thus the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") applies. See Lindh v. Murphy, 521 U.S. 320, 326 (1997). Under AEDPA, federal habeas corpus relief is not available for any claim decided on the merits in the state court proceedings unless the state court's adjudication of the claim:  (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in state court. See 28 U.S.C. 2254(d). Nevertheless, where a state court provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether the state court was objectively unreasonable in its application of clearly established federal law. See Musladin v. Lamarque, 555 F.3d 830, 835 (9th Cir. 2009); see also Delgado v. Lewis, 223 F.3d 976, 981-82 (9th Cir. 2000), overruled on other grounds, Lockyer v. Andrande, 538 U.S. 63 (2003).

As a threshold matter, this Court must "first decide what constitutes 'clearly established Federal law, as determined by the Supreme Court of the United States.'" Lockyer, 538 U.S. at 71 (quoting 28 U.S.C. § 2254(d)(1)). "'[C]learly established federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision.'" Id. (citations omitted). Under the unreasonable application clause, a federal habeas court making the unreasonable application inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." See Williams v. Taylor, 529 U.S. 362, 409 (2000). Thus, "a federal court may not issue the writ

3

simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. Although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court decision is an objectively unreasonable application of clearly established federal law. See Clark v. Murphy, 331 F.3d 1062, 1070 (9th Cir. 2003) ("While only the Supreme Court's precedents are binding . . . and only those precedents need be reasonably applied, we may look for guidance to circuit precedents.").

The first step in applying AEDPA's standards is to "identify the state court decision that is appropriate for our review." See Barker v. Fleming, 423 F.3d 1085, 1091 (9th Cir. 2005). When more than one court adjudicated Petitioner's claims, a federal habeas court analyzes the last reasoned decision. Id. (citing Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991)). The last reasoned decision with respect to Claim I and Petitioner's due process argument within Claim II is from the County of San Bernardino Superior Court. Petitioner raised his remaining arguments (except Claim IV) to the California Supreme Court which issued a summary denial. Thus, with respect to those arguments the standard is also whether the state court was objectively unreasonable in its application of clearly established federal law. See Harrington v. Richter, No. 09-587, – S.Ct. –, 2011 WL 148587, at *9 (Jan. 19, 2011) ("Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by a showing there was no reasonable basis for the state court to deny relief.")

Petitioner did not raise Claim IV to the California Supreme Court. A petitioner satisfies the exhaustion requirement by providing the highest state court with a full and fair opportunity to consider each claim before presenting it to the federal court. See Baldwin v. Reese, 541 U.S. 27, 29 (2004); Fields v. Waddington, 401 F.3d 1018, 1020 (9th Cir. 2005). As Petitioner never raised Claim IV to the California Supreme Court it is deemed unexhausted. See 28 U.S.C. § 2254(b)(1). Nevertheless, unexhausted claims may "be denied on the merits, notwithstanding the

failure of the applicant to exhaust the remedies in the courts of the State." 28 U.S.C. § 2254(b)(2). A federal court considering a habeas corpus petition may deny an unexhausted claim on the merits when it is perfectly clear that the claim is not "colorable." See Cassett v. Stewart, 406 F.3d 614, 624 (9th Cir. 2005).

## IV.  DISCUSSION OF PETITIONER'S CLAIMS

### A.  Claim I

In Claim I, Petitioner cites to the Ex Post Facto Clause and argues that the Board erred by not setting a minimum parole release date pursuant to the applicable matrix. However, by its terms, the base term matrix has no application unless and until a prisoner is found suitable for parole. See 15 Cal. Code Regs. § 2403(a) ("The panel shall set a base term for each life prisoner *who is found suitable for parole*") (emphasis added). Petitioner was not found suitable for parole. Therefore, it was not necessary for the Board to establish Petitioner's base term matrix. Petitioner is not entitled to federal habeas relief on Claim I.

### B.  Claim II

Within Claim II, Petitioner argues that the Board's decision denying parole violated his due process and equal protection rights along with his right to be free from cruel and unusual punishment. Each of these arguments will be considered in turn.

#### i.  Due Process

First, Petitioner asserts that the Board's reliance on unchanging factors such as the circumstances of his commitment offense and his past criminal history in denying parole violated his due process rights. The Due Process Clause of the Fourteenth Amendment prohibits state action that deprives a person of life, liberty, or property without due process of law. A person alleging a due process violation must first demonstrate that he or she was deprived of a protected liberty or property interest, and then show that the procedures attendant upon the deprivation were not constitutionally sufficient. See Ky. Dep't of Corr. v. Thompson, 490 U.S. 454, 459-60 (1989). The full panoply of rights afforded a defendant in a criminal proceeding is not

5

constitutionally mandated in the context of a parole proceeding.  See Pedro v. Or. Parole Bd., 825 F.2d 1396, 1398-99 (9th Cir. 1987).  The Supreme Court has held that a parole board's procedures are constitutionally adequate if the inmate is given an opportunity to be heard and a decision informing him of the reasons he did not qualify for parole.  See Greenholtz v. Inmates of Neb. Penal and Corr. Complex, 442 U.S. 1, 16 (1979).

The landscape of a California state prisoner bringing a due process claim for a denial of parole has changed with the recent United States Supreme Court decision in Swarthout v. Cooke, No. 10-333, – S.Ct. –, 2011 WL 197627 (Jan. 24, 2011) (per curiam).  Prior to Swarthout, the Ninth Circuit held that as a matter of state law, denial of parole to California inmates must be supported by at least "some evidence" demonstrating current dangerousness.  See Hayward v. Marshall, 603 F.3d 546, 562-63 (9th Cir. 2010) (en banc).  In its decision in Cooke v. Solis, 606 F.3d 1206, 1213 (9th Cir. 2010) rev'd by, Swarthout, 2011 WL 197627, the Ninth Circuit had held that "California's 'some evidence' requirement is a component of the liberty interest created by the parole system of the state."

As stated above, Swarthout reversed the Ninth Circuit in Cooke.  The Supreme Court stated that with respect to parole:

> Whatever liberty interest exists is, of course, a *state* interest created by California law.  There is no right under the Federal Constitution to be conditionally released before the expiration of a valid sentence, and the States are under no duty to offer parole to their prisoners.  When, however, a state creates a liberty interest, the Due Process Clause requires fair procedures for its vindication – and federal courts will review the application of those constitutionally required procedures.  In the context of parole, we have held that the procedures required are minimal.  In Greenholtz, we found that a prisoner subject to a parole statute similar to California's received adequate process when he was allowed an opportunity to be heard and was provided a statement of the reasons why parole was denied.  442 U.S. at 16.  "The Constitution," we held, "does not require more."  Ibid.

Swarthout, 2011 WL 197627, at *2.  The Supreme Court continued by explaining that, "[b]ecause the only federal right at issue is procedural, the relevant inquiry is what process [the

6

petitioners] received, not whether the state court decided the case correctly." Id. at *3.

In this case, Petitioner was given an opportunity to be heard at his parole suitability hearing. He also was given a statement of reasons why parole was denied. As the Supreme Court stated in Greenholtz and reaffirmed in Swarthout, that is all that is required under the Federal Constitution. Therefore, Petitioner's due process argument does not merit federal habeas relief under these circumstances.

        ii. Equal Protection

Next, Petitioner argues that the Board violated his equal protection rights by continuing to use his commitment offense and his past criminal history to deny parole. Petitioner appears to assert that by relying on these unchanging factors, the Board violated the Equal Protection Clause. First, Petitioner is incorrect on the facts that the Board only relied on his commitment offense and his prior criminal history. For example, the Board also cited to Petitioner's psychological reports in denying Petitioner's parole.

Even if Petitioner was correct on the facts on this equal protection argument, he still would not be entitled to federal habeas relief in these circumstances. The Fourteenth Amendment's Equal Protection Clause "is essentially a direction that all persons similarly situated should be treated alike." Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985). Petitioner can establish an equal protection claim by showing that the Respondent intentionally discriminated against the Petitioner based on his membership in a protected class, see Lee v. City of Los Angeles, 250 F.3d 668, 686 (9th Cir. 2001), or that similarly situated individuals were treated differently without a rational basis for the difference in tereatment. See Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (per curiam). To state an equal protection claim under this second theory, Petitioner must allege that: (1) he was intentionally treated differently from other similarly situated; and (2) there is no rational basis for the difference in treatment. See Engquist v. Oregon Dep't of Agric., 553 U.S. 591, 601 (2008). In this case, Petitioner fails show that he was intentionally treated differently than others similarly situated

and he does not show that he was intentionally discriminated based on his membership in a protected class. Thus, Petitioner is not entitled to federal habeas relief that his equal protection rights were violated.

### iii. Cruel and Unusual Punishment

Petitioner also argues that his Eighth Amendment right to be free from cruel and unusual punishment was violated when the Board denied parole. A criminal sentence that is not proportionate to the crime of conviction may indeed violate the Eighth Amendment. Outside of the capital punishment context, however, the Eighth Amendment "forbids only extreme sentences that are grossly disproportionate to the crime." United States v. Bland, 961 F.2d 123, 129 (9th Cir. 1992) (quoting Harmelin v. Michigan, 501 U.S. 957, 1001 (1991) (Kennedy, J., concurring). The threshold for an inference of gross disproportionality is high. So long as the sentence imposed by the state court does not exceed statutory maximums, it will not be considered cruel and unusual punishment under the Eighth Amendment. See United States v. Mejia-Mesa, 153 F.3d 925, 930 (9th Cir. 1998); United States v. McDougherty, 920 F.2d 569, 576 (9th Cir. 1990);. As the Ninth Circuit has observed, "[u]nder Harmelin, it is clear that a mandatory life sentence for murder does not constitute cruel and unusual punishment." United States v. LaFleur, 971 F.2d 200, 211 (9th Cir. 1991).

In this case, Petitioner did not receive a mandatory life sentence, but rather a life sentence which carries with it the possibility of parole. Here, the Board did not transform Petitioner's sentence into one without the possibility of parole. In its decision, the Board stated that it would revisit Petitioner's parole suitability in another year. (See Pet'r's Pet. at p. 90.) Petitioner's sentence has not been converted to one without the possibility of parole. Petitioner is not entitled to federal habeas relief on his cruel and unusual punishment argument.

### C. Claim III

In Claim III, Petitioner makes two main arguments with respect to his plea agreement and the Board's denial of his parole in April 2008. First, Petitioner argues that the district attorney is

violating the plea agreement by continuing to oppose his parole at his parole suitability hearings. Second, Petitioner asserts that he was not informed of all of the consequences of his plea agreement when it was made back in 1983. For the following reasons, neither argument warrants granting Petitioner federal habeas relief.

"'Plea agreements are contractual in nature and are measured by contract law standards.'" United States v. De la Fuente, 8 F.3d 1333, 1337 (9th Cir. 1993) (quoting United States v. Keller, 902 F.2d 1391, 1393 (9th Cir. 1990)). Petitioner fails to state a valid claim for habeas relief. In Petitioner's own habeas petition, he admits that he was sentenced to fifteen years to life imprisonment. Petitioner does not show that his plea agreement was conditioned in any way by the district attorney agreeing to not oppose parole after Petitioner served a particular amount of time in prison. See, e.g., James v. Borg, 24 F.3d 20, 26 (9th Cir. 1994) ("Conclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief."). Petitioner must show that he is in violation of the Constitution, laws or treaties of the United States to receive federal habeas relief. See, e.g., Silvia v. Woodford, 279 F.3d 825, 835 (9th Cir. 2002). Petitioner fails to make this showing as he fails to show that the district attorney's opposition to his parole violated his plea agreement.

Next, Petitioner alludes to the fact that he was not fully informed of the consequences of his plea. Specifically, Petitioner states that, "[a]t the plea colloquy, the petitioner was not informed of the direct consequences of his guilty plea, the record will support this fact. The California Supreme Court an [sic] the United States Supreme Court has ruled that a Petitioner must be inform [sic] of the [d]irect [c]onsequences of his plea not to do so is a violation of the plea agreement." (Pet'r's Pet. at p. 17.)[2] Thus, Petitioner appears to argue that his plea was not knowing or intelligent.

Petitioner's plea occurred in 1983. Because Petitioner's conviction became final prior to

---

[2] The Petitioner incorporated by reference the arguments he made in the state courts to his federal habeas petition.

AEDPA's enactment on April 24, 1996, the one-year statute of limitations began to run on April 25, 1996, and expired one year later, on April 24, 1997, yet Petitioner did not file this federal habeas petition until 2008.  Furthermore, to the extent that the factual predicate of Petitioner's unknowing and intelligent plea argument could not have been discovered until the district attorney opposed parole before the Board, see 28 U.S.C. § 2244(d)(1)(D), the claim would still be time-barred under AEDPA.  In the Petition, Petitioner stated that the 2008 hearing marked the tenth time that the district attorney opposed his parole.  Thus, Petitioner would have certainly discovered the facts giving rise to this argument well beyond the applicable one-year AEDPA statute of limitations under these circumstances.  Thus, both of Petitioner's arguments with respect to his plea agreement do not warrant granting federal habeas relief.

   D.  Claim IV

In his traverse, Petitioner alludes for the first time that the denial of his parole and the district attorney's opposition to his parole violated Booker, 543 U.S. 220.  At the outset, an argument that was not raised in Petitioner's opening brief, but only his traverse need not be analyzed.  See Cedano-Viera v. Ashcroft, 324 F.3d 1062, 1066 n. 5 (9th Cir. 2003); Cacoperdo v. Demosthenes, 37 F.3d 504, 507 (9th Cir. 1994) ("A traverse is not the proper pleading to raise additional grounds for relief.").  Additionally, as previously stated, Petitioner failed to make this Booker argument in his state habeas petitions.  However, even if the Booker argument was properly raised, it is not a colorable claim under these circumstances.

In Apprendi v. New Jersey, 530 U.S. 466, 490 (2000), the United States Supreme Court held that as a matter of constitutional law, other than the fact of a prior conviction, "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."  In Blakely v. Washington, 542 U.S. 296, 303 (2004), the Supreme Court held that the "statutory maximum for Apprendi purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant."  Finally, in Booker, 543 U.S. at 264, the Supreme Court

10

applied its holding to the Federal Sentencing Guidelines and held that district courts are not "bound to apply the Guidelines," but "must consult those Guidelines and taken them into account when sentencing."[3]  Even if the Apprendi/Blakely/Booker rules are applicable in the parole context, Petitioner's claim is not colorable because the denial of parole did not increase his sentence beyond the statutory maximum of life in prison.

## V.  CONCLUSION

For the foregoing reasons, IT IS HEREBY RECOMMENDED that Petitioner's Petition for writ of habeas corpus be DENIED.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within seven days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).  In any objections he elects to file, petitioner may address whether a certificate of appealability should issue in the event he elects to file an appeal from the judgment in this case.  See Rule 11, Federal Rules Governing Section 2254 Cases (the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant).

DATED: February 1, 2011

_____
TIMOTHY J BOMMER
UNITED STATES MAGISTRATE JUDGE

---

[3] As Petitioner's case arose in state court, the Federal Sentencing Guidelines are not applicable in this case.

11